# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| IN RE: | ) |
| | ) |
| M. JULIA HOOK | ) Civil No. 1:07-CV-00876 BSJ |
| DAVID L. SMITH, | ) |
| | ) (Bankr. Nos. 06-ap-01762-SBB |
| Debtors, | ) 06-bk-15511-SBB) |
| | ) |
| M. JULIA HOOK | ) |
| DAVID L. SMITH, | ) **MEMORANDUM OPINION** |
| | ) **& ORDER** |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

\* \* \* \* \* \* \* \* \*

This court heard argument on the appeal in the above-captioned adversary proceeding on

June 18, 2008, and the court took the matter under advisement. (*See* Minute Entry, dated June

18, 2008). Thereafter, the court entered an order deferring further action in this appeal pending a

ruling by the Tenth Circuit Bankruptcy Appellate Panel in a related matter, namely an appeal

from an order of dismissal of the Chapter 11 case in which this adversary proceeding arose. *See*

*David Smith v. Colorado Dept. of Revenue, et al.*, BAP No. CO-07-106 (10th Cir. BAP). On

August 26th, the Bankruptcy Appellate Panel issued its opinion and judgment in that matter

affirming the dismissal of the Chapter 11 case, and on September 8th, issued its mandate, which

was received by the Bankruptcy Court. (*See* Notice, filed September 8, 2008 (dkt. no. 282), in

*David Smith v. Colorado Dept. of Revenue, et al. (In re M. Julia Hook, et al.)*, Case No. 06-

15511 SBB (Bankr. D. Colo.).)

Having reviewed the briefs and arguments presented by the parties as well as the record on appeal, this court concludes that the Bankruptcy Court's January 4 and April 19, 2007 Orders dismissing this adversary proceeding should be affirmed.

## BACKGROUND

On August 31, 2006, the debtors commenced this adversary proceeding by filing a complaint against the United States, the Commissioner of Internal Revenue, and three named defendants seeking damages, declaratory and injunctive relief. The complaint alleges that various officers of the Internal Revenue Service engaged in unlawful income tax collection activities affecting the debtors in violation of various federal statutory provisions and in contravention of the debtors' rights under the Fifth Amendment to the United States Constitution. It also alleges that a prior default judgment entered against them by the United States Tax Court was based upon "false and defamatory charges made by the Commissioner of Internal Revenue," and should be declared "null and void *ab initio*" by the Bankruptcy Court. The debtors invoked the jurisdiction of the Bankruptcy Court as a non-core proceeding related to a pending Chapter 11 bankruptcy case[1] under 28 U.S.C. § 157(c)(1), citing to 26 U.S.C. § 7433,[2]

---

[1]*David Smith v. Colorado Dept. of Revenue, et al. (In re M. Julia Hook, et al.)*, Case No. 06-bk-15511 SBB (Bankr. D. Colo. filed August 18, 2006). This Chapter 11 case was subsequently dismissed, and the dismissal was affirmed on appeal. *See David Smith v. Colorado Dept. of Revenue, et al. (In re M. Julia Hook, et al.)*, BAP No. CO-07-106 (10th Cir. BAP decided Aug. 26, 2008).

[2]Section 7433(a) reads:

If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages

(continued...)

28 U.S.C. §§ 1331 (federal question), 1340 (internal revenue), 1346 (claims against the United States) and the Fifth Amendment as their jurisdictional footing.[3] On October 5, 2006, the defendants moved to dismiss the debtors' complaint for lack of jurisdiction,[4] the debtors responded,[5] and on January 4, 2007, the Bankruptcy Court granted the motion in part, dismissing the debtors' claims for declaratory relief concerning the prior Tax Court judgment and injunctive relief requiring the release of property already levied upon or subjected to lien by the IRS.[6] The court reserved ruling on the balance of the grounds asserted by the defendants in favor of further briefing concerning the jurisdiction of the Bankruptcy Court to adjudicate the debtors' damages claims under 26 U.S.C. § 7433(a), which contemplates a civil action brought "in a district court

---

[2](...continued)
resulting from such actions.

[3](*See* Complaint, filed August 31, 2006 (dkt. no. 1), in *M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.).)

[4]The defendants contended that where the conduct of Internal Revenue Service officers is concerned, the sole proper defendant is the United States, and that

[t]he claims against the United States must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, as the plaintiffs have failed to make allegations which, if proven, would establish a waiver of sovereign immunity by the United States. Furthermore, the Bankruptcy Court lacks jurisdiction over plaintiffs' claims against the United States with respect to the determination of federal income tax liabilities as these liabilities have already been determined by the United States Tax Court. The Bankruptcy Court also lacks jurisdiction to hear plaintiffs' challenge to the Notice of Determination issued by the IRS pursuant to a Collection Due Process proceeding as any challenge to a Notice of Determination involving income taxes is properly made by an appeal to the Tax Court. Finally, the requested injunctive relief is barred by the Anti-Injunction Act.

(Defendants' Memorandum in Support of Motion to Dismiss, filed October 5, 2006 (dkt. no. 6), at 2-3, in *M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.).)

[5]The debtors asked the Bankruptcy Court to defer consideration of the defendants' motion to dismiss until trial because determination of the issues raised by the motion involved matters "required to be considered and determined by the jury in Plaintiffs' suit for damages and other legal and equitable relief under 26 U.S.C. § 7433 and the Fifth Amendment," and would deprive debtors of "their Seventh Amendment right to a trial by jury." (Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, filed October 13, 2006 (dkt. no. 10), at 3, in *M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.).)

[6](*See* Order Granting Motion to Dismiss, in Part, filed January 4, 2007 (dkt. no. 19), *in M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.).)

-3-

of the United States" as its exclusive remedy. (*Id.*)

Following the receipt of additional briefs, the Bankruptcy Court ruled that a bankruptcy court is not a "district court of the United States" within the meaning of 26 U.S.C. § 7433, and that it lacked subject matter jurisdiction over the debtors' damages claims against the United States footed upon that statute.[7] The Bankruptcy Court dismissed the remainder of the complaint, (*id.*), and the debtors appealed from both orders.[8]

After briefing was completed but prior to oral argument on this appeal, the Bankruptcy Court dismissed the Chapter 11 case to which this adversary proceeding was 'related,' and the Tenth Circuit Bankruptcy Appellate Panel recently affirmed that dismissal. *See David Smith v. Colorado Dept. of Revenue, et al. (In re M. Julia Hook, et al.)*, BAP No. CO-07-106 (10th Cir. BAP decided Aug. 26. 2008).

## ANALYSIS

### Effect of Dismissal of Chapter 11 Proceeding

"An adversary proceeding is a subpart of a bankruptcy case," *In re Mersmann*, 505 F.3d 1033, 1043 (10th Cir. 2007) (en banc), a litigated matter that is "'pursued within the broader framework cast by the petition.'" *In re Baines*, 528 F.3d 806, 810 (10th Cir. 2008) (quoting *Adelman v. Fourth Nat'l Bank & Trust Co. (In re Durability, Inc.)*, 893 F.2d 264, 266 (10th Cir. 1990); *accord Cascade Energy & Metals Corp. v. Banks (In re Cascade Energy & Metals Corp.)*, 956 F.2d 935, 938-39 (10th Cir. 1992). It is "a particular dispute or matter arising within a

---

[7](*See* Order Dismissing Complaint, filed April 19, 2007 (dkt. no. 27), in *M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.).)

[8](*See* Notice of Appeal, filed April 27, 2007 (dkt. no. 29), in *M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.).)

-4-

pending case, as opposed to the case as a whole." 5 Fed. Proc. L. Ed. *Bankruptcy* § 9:44, at 140 (2004) (footnote omitted).

It has long been held that the dismissal of an underlying bankruptcy case "should result in the dismissal of 'related proceedings.'" *Smith v. Commercial Banking Corp. (In re Smith)*, 866 F.2d 576, 580 (3d Cir. 1989). To begin with, "the [bankruptcy] court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings." *Id.*; *see also Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 162 (2d Cir. 1995); *In re Querner*, 7 F.3d 1199, 1201-02 (5th Cir. 1993); *In re Carraher*, 971 F.2d 327, 328 (9th Cir. 1992); *Fidelity & Deposit Co. of Maryland v. Morris (In re Morris)*, 950 F.2d 1531, 1533 (11th Cir.1992). If the bankruptcy case is dismissed, the jurisdictional nexus with the "related proceeding" vanishes.

Yet in *Morris*, the Eleventh Circuit noted that for adversary proceedings that are "related to" the underlying bankruptcy case, jurisdiction is not automatically stripped from a federal court. The court may examine the degree of difficulty of the related issues, the fairness and convenience to the litigants and the interests of judicial economy in deciding whether to retain jurisdiction. *Id.* The rationale for retention of jurisdiction over an adversary proceeding is that some cases "'have progressed so far that judicial interference is needed to unravel or reserve the rights of the parties.'" *Id.* at 1535 (quoting *Un-Common Carrier Corp. v. Oglesby*, 98 B.R. 751, 753 (S.D. Miss.1989)).[9] The Second Circuit has opined that in deciding whether to dismiss a "related" adversary proceeding, "a court must consider four factors in determining whether to continue to

---

[9]This discretion finds root in the Bankruptcy Code: "11 U.S.C. § 349 empowers the court, in the exercise of its discretion, to retain jurisdiction over the debtors' adversary proceedings so as to permit the pending trial to proceed to a completion in the interests of judicial economy, fairness and convenience to the litigants." *In re Roma Group, Inc.*, 137 B.R. 148, 151 (Bankr.S.D.N.Y. 1992) (citing *Morris*, 950 F.2d at 1535).

exercise jurisdiction: judicial economy, convenience to the parties, fairness and comity." *Porges*, 44 F.3d at 163 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350n.7 (1988)). The Ninth Circuit has also held "that bankruptcy courts are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case is dismissed," and by analogy to retaining jurisdiction over pendent state claims, "the court must consider economy, convenience, fairness and comity in deciding whether to retain jurisdiction" over "related" adversary proceedings. *In re Carraher*, 971 F.2d at 328.

In contrast to "related" proceedings, if the adversary proceeding "depends upon the bankruptcy case for its existence," the"law does not allow the use of discretion" and jurisdiction is "automatically stripped from a federal court." *Pauley v. Bank One Colorado Corp.*, 205 B.R. 272, 275 (D. Colo. 1997); *see also Roma Group, Inc. v. Michael Anthony Jewelers (In re Roma Group, Inc.)*, 137 B.R. 148, 150-51 (Bankr. S.D.N.Y. 1992) (holding that court had discretion to retain an action for money damages resulting from an alleged tortious interference with the debtor's contracts, a claim "related to" the dismissed Chapter 11 case, but that the debtor's cause of action for equitable subordination of a claim disappeared with the dismissal of the underlying bankruptcy case); *In re Davison, III*, 186 B.R. 741, 742 (Bankr. N.D. Fla. 1995) (finding an action for the recovery of a preference must be dismissed upon the dismissal of the underlying bankruptcy case)..

Since *Pauley* was decided in 1997, these principles have been applied in bankruptcy proceedings this District. The Tenth Circuit has also applied these principles in practice, though as yet it has stopped short of adopting them in the form of binding case precedent. *See, e.g., Armstrong v. Bailey,* 101 Fed.Appx. 778, 779 (10th Cir. 2004).

In this instance, the adversary proceeding is "related to" the debtors' Chapter 11 case in that it involves liability for and the attempted collection of federal income tax owed by the debtors, but it does not arise out of or depend upon that case or Title 11 for its existence. The dismissal of the underlying Chapter 11 case thus does not automatically divest the Bankruptcy Court or this court of jurisdiction of this proceeding under *Pauley*. Yet neither the Bankruptcy Court nor this court need exercise its discretion under *Pauley* to retain jurisdiction of this proceeding because as the Bankruptcy Court has already explained, there is nothing of substance to retain.

### Collateral Attack on the Tax Court Judgment

The Bankruptcy Court's January 4, 2007 Order recognized that a federal civil action for declaratory relief—even one annexed to a Chapter 11 bankruptcy case as a "related" adversary proceeding—cannot serve as a proper vehicle for collateral review of a judgment entered by the United States Tax Court.[10]

The proper avenue of judicial review of Tax Court judgments is specified by statute:

**§ 7482. Courts of Review**
**(a) Jurisdiction.--**
**(1) In general.--** The United States Courts of Appeals (other than the United States Court of Appeals for the Federal Circuit) shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; and the judgment of any such court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari, in the manner provided in section 1254 of Title 28 of the United States Code.

---

[10](*See* Order Granting Motion to Dismiss, in Part, filed January 4, 2007 (dkt. no.19), *in M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.) (citing *In re Cody*, 338 F.3d 89 (2d Cir. 2003)).)

26 U.S.C.A. § 7682(a) (2002).

In this case, the debtors contested their tax liabilities for the 1992 through 1996 tax years in the United States Tax Court, which entered a default judgment against them after numerous delays and failures to comply with court orders. *See Smith v. Commissioner*, T.C. Memo 2003-266. They appealed the Tax Court's decision to the United States Court of Appeals for the Tenth Circuit, which affirmed. *Hook v. Commissioner*, 103 Fed. Appx. 661, 94 AFTR 2d 2004-5199 (10th Cir. 2004). They petitioned the Supreme Court for a writ of certiorari, which was denied. *Hook v. Commissioner*, 544 U.S. 950 (2005). They then filed a post-judgment motion with the Tax Court to vacate its judgment as to the 1992 through 1996 tax years. The motion denied by the Tax Court, and that denial was affirmed on appeal by the Tenth Circuit. *See Smith v. Commissioner of Internal Revenue*, 160 Fed. Appx. 666, 669-70 (10th Cir. 2005). It thus appears that the debtors have exhausted the appellate review process delineated in the statute.

Nothing in the Tax Code, the Bankruptcy Code or the Judicial Code empowers a bankruptcy court to determine anew the validity of a Tax Court judgment, or to enter a declaratory judgment that a Tax Court judgment is "null and void *ab initio*" in the context of a collateral civil proceeding solely attacking the validity of the Tax Court judgment. Instead, the question that the bankruptcy court may decide is whether a Tax Court judgment is to be given preclusive collateral estoppel effect on the underlying issue of the amount of a debtor's tax liability in a subsequent bankruptcy proceeding. Section 505(a) of the Bankruptcy Code provides that a bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid,

-8-

and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction," except that he court "may not so determine . . . the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title." 11 U.S.C.A. § 505(a)(1), (2) (Supp. 2008).

It has long been understood that principles of *res judicata* and collateral estoppel apply in federal income tax cases and that "a judgment upon the merits is an absolute bar to the subsequent action" on the same claim. *Tait v. Western Maryland Ry. Co.*, 289 U.S. 620, 623 (1933); *United States v. International Bldg. Co.*, 345 U.S. 502, 504 (1953). Yet "[i]n the majority of jurisdictions, collateral estoppel does not apply to default judgments in judicial proceedings, where the judgment necessarily is entered against an absent party without any actual adjudicatory process taking place." *Murray v. Alaska Airlines, Inc.*, 522 F.3d 920, 924 (9th Cir. 2008) (citations omitted). Bankruptcy courts have recognized that "[t]he general rule is that a default judgment will not be granted preclusive effect." *In re Jordana*, 221 B.R. 950, 954 (Bankr.W. D. Okla. 1998). But "there are recently decided exceptions to the this general rule." *Id.*

For example, if the losing party has significantly participated in the previous action, such as by engaging in discovery over a period of sixteen months, then collateral estoppel will apply. *Id.* Further, if the losing party in the previous action has actively participated in the action over a period of time and has engaged in serious misconduct, such as refusing to comply with discovery and obstructing the actual judicial process of litigation, then collateral estoppel will apply. *See FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368-69 (9th Cir. 1995); *Bush v. Balfour Beatty Bahamas Limited (In re Bush)*, 62 F.3d 1319, 1324-25 (11th Cir. 1995); *Gober v. Terra + Corporation*, 100 F.3d 1195, 1205-06 (5th Cir. 1996); *Pahlavi v. Ansari*, 113 F.3d 17, 19-20 (4th Cir. 1997).

-9-

*Id. See also Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216-17 (3d Cir. 1997) (affirming use of collateral estoppel in bankruptcy discharge proceeding where default entered because debtor wilfully obstructed discovery). The "actual litigation" requirement of collateral estoppel may thus be satisfied because the party was afforded a reasonable opportunity to defend himself on the merits but chose not to do so. *See Bush*, 62 F.3d at 1324.

In affirming the Tax Court's default judgment against these debtors, the Tenth Circuit pointed out that the judgment was entered only after four days of trial, and that the debtors had "failed to appear at the resumption of the trial"; the court of appeals also noted the debtors' "repeated failure to comply fully with the tax court's orders ." 103 Fed. Appx. at 662. Given this history, the Tax Court judgment affecting these debtors would likely be given preclusive collateral estoppel effect.

But as the debtors hasten to point out, this adversary proceeding was *not* commenced pursuant to 11 U.S.C. § 505(a), and thus did not invoke the Bankruptcy Court's power to adjudicate the amount or legality of the federal income tax owed by the debtors. There is no substantive legal claim asserted in this proceeding as to which the preclusive effect of the Tax Court judgment may be determined. Absent such a claim, the Bankruptcy Court cannot act.

For these reasons, the Bankruptcy Court's January 4, 2007 Order Granting Motion to Dismiss, in Part must be affirmed as to the debtors' request for declaratory relief.

**Injunctive Relief Against Tax Collection**

The Bankruptcy Court's January 4th Order also dismissed the debtors' claim for injunctive relief requiring the release and return of property already levied upon or liened by the Internal Revenue Service: "The Anti-Injunction Act, 26 U.S.C. § 7421(a), prohibits this court

-10-

from exercising jurisdiction to grant any such injunctive relief restraining the collection of federal taxes."[11]

Cases such as *United States v. Whiting Pools*, 462 U.S. 198 (1983), indicate that a Bankruptcy Court has jurisdiction to recover property of a debtor that has been levied upon or liened by the IRS in its effort to collect unpaid federal income taxes. *See* 11 U.S.C.A. § 542(a) (entity holding property of the estate shall deliver it to the trustee). In *Whiting Pools*, the Court was confronted with the question of whether there had been a transfer of ownership of the debtor's property to the IRS where the IRS had seized that property to satisfy its tax lien shortly before the debtor filed a Chapter 11 petition.[12] The Court held that the Chapter 11 "reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization," including property seized or levied upon by the IRS, at least where that property had not yet been sold or otherwise liquidated. 462 U.S. at 209.

> The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions, 26 U.S.C. §§ 6331 and 6332, are special procedural devices available to the IRS to protect and satisfy its liens, . . . and are analogous to the remedies available to private secured creditors. . . . They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody. . . . At no point does the Service's interest in the property exceed the value of the lien. . . . The IRS is obligated to return to the debtor any surplus from a sale. Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale. . . . In fact, the tax sale provision itself refers to the debtor as the owner of the property after the seizure but prior to the sale. Until

---

[11](Order Granting Motion to Dismiss, in Part, filed January 4, 2007 (dkt. no.19), *in M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.) (citing *Wyoming Trucking Ass'n v. Bentsen*, 82 F.3d 930 (10th Cir. 1996)).)

[12]The debtor in *Whiting Pools* owed back taxes to the Service, but had not responded to assessments and demands for payment. A tax lien arose and attached to the debtor's property. The IRS then seized the debtor's tangible property pursuant to 26 U.S.C. § 6331. The United States moved to have the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, declared inapplicable to the IRS or alternatively for relief from the stay. The debtor counterclaimed for a turnover order pursuant to 11 U.S.C. § 542(a).

-11-

such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a).

*Id.* at 210-11 (footnote & citations omitted); *see also United States v. Triangle Oil*, 277 F.3d 1251, 1256 (10th Cir. 2002) (stating that "while the levy power does provide the IRS with rights to property co-extensive with those of the taxpayer . . . absent a foreclosure or similar action the taxpayer still retains ownership of the property" (citations omitted)). Even a § 542(a) turnover order does not terminate the IRS tax lien on the debtor's property, but the IRS' lien interest may be adjusted within the context of the Chapter 11 proceeding.[13]

" *Whiting Pools* is dispositive on the issue of whether the debtor's right to turnover prevails over the interest acquired by the IRS through its prepetition levy on the debtor's property," including any cash or cash equivalents seized by the IRS. *In re Challenge Air Intern., Inc.*, 952 F.2d 384, 386 (11th Cir. 1992). *Whiting Pools* "made it clear that the IRS does not have any special immunity from the reach of § 542." *Id.*

But the debtors' Complaint did not invoke the § 542 turnover requirement, the trustee's (or debtor's) avoiding powers under § 544,[14] or ground its prayer for injunctive relief in any other

---

[13]As the Court explained:

> When property seized prior to the filing of a petition is drawn into the Chapter 11 reorganization estate, the Service's tax lien is not dissolved; nor is its status as a secured creditor destroyed. The IRS, under § 363(e), remains entitled to adequate protection for its interests, to other rights enjoyed by secured creditors, and to the specific privileges accorded tax collectors. Section 542(a) simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize.

*Id.* at 211-12.

[14]As the court of appeals has explained:

> A bankruptcy trustee has general authority to avoid certain transfers "for the benefit of the estate." 11 U.S.C. §§ 544, 547, 548, 550. Under the bankruptcy code, a debtor-in-possession has the powers of a trustee, *id.* § 1107(a), and, as such, the authority to bring avoidance actions. *Zilkha Energy Co. v.*

(continued...)

-12-

provision of the Bankruptcy Code. The debtors' claim for injunctive relief was pleaded as arising directly under the Fifth Amendment, and the Bankruptcy Court did not err in concluding that when pleaded as such, it must fail.

> The Bankruptcy Court cited the Anti-Injunction Act, 26 U.S.C. § (a), which reads:

> Except as provided in sections 6015 (e), 6212 (a) and (c), 6213 (a), 6225 (b), 6246 (b), 6330(e)(1), 6331 (i), 6672 (c), 6694 (c), and 7426 (a) and (b)(1), 7429 (b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C.A. § 7421(a) (2002). The purpose of this section "is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962); *accord, Bob Jones University v. Simon*, 416 U.S. 725, 736 (1974). "In essence, the Act bars claims seeking to enjoin the government from assessing or collecting federal taxes." *Dye v. United States*, 516 F. Supp. 2d 61, 72 (D.D.C. 2007).

The statutory exception to the § 7426(a) bar that the debtors rely upon is 26 U.S.C. § 6330(e)(1), which permits a party to seek injunctive relief "in a proper court" when the IRS initiates a levy during the statutory period of suspension that is triggered by the request for a collection due process (CDP) hearing. *See, e.g., Hart v. United States*, 291 F. Supp. 2d 635, 645 (N.D. Ohio 2003).

The Complaint does not allege specific facts delineating a sequence of events showing

---

[14](...continued)
*Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990) (debtor-in-possession's authority under § 1107(a) includes the right to bring § 544 avoidance action).

*In re MS55, Inc.*, 477 F.3d 1131, 1134-35 (10th Cir. 2007).

that the IRS had acted in violation of § 6330(e). It pleads only the conclusory assertion that levy was made during the suspension period under § 6330(e), augmented with excerpts from the debtors' own correspondence in March of 2006 requesting a CDP hearing; and it requests "an order requiring the Commissioner of Internal Revenue to return to plaintiffs all money and other property (or right to property) subjected to levy or lien actions during the time the suspension under 26 U.S.C. § 6330(e)(1) was in force." Yet even assuming that such pleading would be sufficient to invoke the § 6330(e) exception to the § 7421(a) bar—a dubious proposition at best—the power to grant such special injunctive relief lay beyond the reach of the Bankruptcy Court in this proceeding.

As the court of appeals explained in *In re Richards*, 994 F.2d 763 (10th Cir. 1993):

> In *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990), the United States Supreme Court referred to the "traditional understanding" that bankruptcy courts are courts of equity and that under 11 U.S.C. § 105(a) they may "issue *any* order, process or judgment necessary or appropriate to carry out the provisions" of the Bankruptcy Code. (emphasis added) In *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir. 1990), *modified on other grounds, Abel v. West*, 932 F.2d 898 (10th Cir. 1991), we also recognized the "supplementary equitable powers" granted bankruptcy courts under 11 U.S.C. § 105(a), but went on to state that such powers, however, "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the [Bankruptcy] Code."

994 F.2d at 765; *see also* 11 U.S.C.A. § 105(a) (2004) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].").  A bankruptcy court thus has the equitable power to grant specific injunctive relief in furtherance of the purposes and policies of the Bankruptcy Code, such as staying collection activity against a non-debtor guarantor in aid of a debtor's ongoing Chapter 11 reorganization. *See, e.g., In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 599 (10th Cir. 1990).

-14-

Resorting to the Bankruptcy Court's supplementary equitable powers in this instance—to craft a § 105(a) injunction demanding the disgorgement of money and property seized or levied upon pre-petition by the IRS—appears to ignore more specific provisions of the Bankruptcy Code, namely the § 542 turnover provision and the avoiding power under § 544. Section 542 certainly is an "other, more specific" provision of the Bankruptcy Code, with specific standards and policies governing its application. It would be inconsistent with § 542 for the Bankruptcy Court to grant specific injunctive relief ordering a turnover of property of the estate wholly apart from the requirements of § 542 or the debtor's avoiding powers under § 544. Remembering that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code," *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988),[15] any affirmative relief by the Bankruptcy Court requiring the turnover of debtors' money or property seized or levied upon by the IRS must be framed within the context of § 542's turnover requirement and the debtor's avoiding powers under § 544.[16]

---

[15]Otherwise, debtors may call upon bankruptcy courts to grant relief against creditors on two divergent tracks—one governed by the specific policies and limitations of the Bankruptcy Code as enacted by Congress and one left solely to the equitable discretion of the court.

[16]The reach of bankruptcy court jurisdiction under §§ 542-544 is very broad. Property of the debtor's estate includes:

> property of the debtor "wherever located and by whomever held", including (among other things) "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). It is undisputed that this encompasses causes of action that belong to the debtor, as well as the debtor's intellectual property, such as interests in patents, trademarks and copyrights. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 367 ("House Report"); S. Rep. No. 989, 95th Cong., 2d Sess. 82 ("Senate Report"), U.S. Code Cong. & Admin. News 1978, p. 5787; United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983); In re S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987); 4 King, Collier on Bankruptcy ¶¶ 541.06, 541.10. The estate also includes property recoverable under the Code's "turnover" provisions, which allow the trustee to recover property that "was merely out of the possession of the debtor, yet remained 'property of the debtor.'" House Report at 367; Senate Report at 82, U.S.Code Cong. & Admin.News 1978, pp. 5868, 6323; see 11 U.S.C. §§ 542 , 543 (turnover provisions); *Whiting Pools*, 462 U.S. at 204-09 & n. 11, 103 S.Ct. at 2313-16 & n. 11.

(continued...)

-15-

Even before reaching the question of the Anti-Injunction Act, this court concludes that the Bankruptcy Court simply lacked the jurisdiction to grant specific injunctive relief as framed by the Complaint, and the dismissal of that portion of the Complaint on jurisdictional grounds should be affirmed.

### *Bivens* **Claims Against the Individual Defendants**

The Constitution provides that federal courts may be given original jurisdiction over "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const., Art. III, §§ 1, 2. Since 1875, Congress has invested the federal district courts with general jurisdiction over such cases. *See* Judiciary Act of March 3, 1875, § 1, 18 Stat. 470; 13B Charles A. Wright, Arthur Miller, & Edward Cooper, *Federal Practice and Procedure* § 3561 (2d ed. 1984). The statute currently provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (2006).

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Court held that victims of a Fourth Amendment violation by federal officers acting under color of their authority may bring suit for money damages against those officers in federal court, pleading a cause of action arising directly under the Constitution itself—a claim within the "federal question" jurisdiction of the district courts under § 1331. *Bivens* noted that Congress had not specifically provided for such a remedy and that "the Fourth Amendment does not in so many

---

[16](...continued)
*United States v. Inslaw, Inc.*, 932 F.2d 1467, 1471 (D.C. Cir. 1991).

words provide for its enforcement by an award of money damages for the consequences of its violation," *id.* at 396, but finding "no special factors counseling hesitation in the absence of affirmative action by Congress," and "no explicit congressional declaration" that money damages may not be awarded, the *Bivens* Court ruled that "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'" *Id.* at 396-397 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).

So-called "*Bivens* actions" for money damages against individual federal officers have subsequently been permitted under § 1331 for violations of the Due Process Clause of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980). Yet in *Schweiker v. Chilicky*, 487 U.S. 412 (1988), the Court declined to recognize a *Bivens* claim involving the social security system, given the existence of a mechanism for the resolution of claims. Similarly, the Tenth Circuit has concluded that *Bivens* claims are not available in tax-related disputes because Congress has created a comprehensive statutory scheme which provides alternative remedies for the types of wrongs that may otherwise be the subject of a *Bivens* claim. *See Dahn v. United States*, 127 F.3d 1249, 1254 (10th Cir. 1997) (holding that "in light of the comprehensive administrative scheme created by Congress to resolve tax-related disputes, individual agents of the IRS are also not subject to *Bivens* actions"); *National Commodity and Barter Ass'n, National Commodity Exchange v. Gibbs*, 886 F.2d 1240, 1248 (10th Cir. 1989):

> The debtors insist that they have pleaded *Bivens* claims against the individual IRS officers

named in the Complaint, that this court has jurisdiction of their claims under § 1331, and that their claims were properly referred to the Bankruptcy Court as "related" claims pursuant to this court's general order of reference. But the debtors' *Bivens* claims "are foreclosed by Tenth Circuit Court of Appeals' decisions which have declined to recognize a *Bivens* remedy for claims that an IRS agent violated a taxpayer's constitutional rights concerning the assessment or collection of taxes because the Internal Revenue Code contains a comprehensive administrative remedial scheme to protect the rights of taxpayers." *Banks v. Rubin*, 72 F. Supp. 2d 1198, 1201 (D.Colo. 1999) (citing *Dahn* and *Gibbs*); *see also Abell v. Sothen*, 214 Fed. Appx. 743 (10th Cir. 2007) (no *Bivens* action against individual IRS agents arising from tax collection activities).

If the debtors are aggrieved by unlawful IRS tax collection activity as they allege in their Complaint, their exclusive civil remedy is to be found in 26 U.S.C. § 7433(a).

### Bankruptcy Court Jurisdiction Under 26 U.S.C. § 7433(a)

As noted above, 26 U.S.C. § 7433(a) provides that "[i]f, in connection with any collection of Federal tax with respect to a taxpayer," any officer or employee of the Internal Revenue Service "recklessly or intentionally, or by reason of negligence, disregards any provision of" the Internal Revenue Code or any regulation promulgated under the Code, "such taxpayer may bring a civil action for damages against the United States in a district court of the United States." Except as provided in 26 U.S.C. § 7432, "such civil action shall be the exclusive remedy for recovering damages resulting from such actions." By its own terms, § 7433 bars the recovery of damages "unless the court determines that the plaintiff has exhausted the administrative remedies

-18-

available to such plaintiff within the Internal Revenue Service." 26 U.S.C.A. § 7433(d)(1).[17]

In ruling upon the United States' motion to dismiss, the Bankruptcy Court initially deferred on the question whether "the Bankruptcy Court may be considered a district court of t he United States for purposes of 26 U.S.C. § 7433(a) when the aggrieved taxpayer has filed a bankruptcy petition."[18]

---

[17]The debtors insist that they have a Seventh Amendment right to a jury trial on their § 7433(a) claims, and that the Bankruptcy Court's dismissal has denied them that fundamental right. But the debtors misapprehend the nature of their Seventh Amendment right and the cause of action they have attempted to plead.

A civil damages claim under § 7433(a) may only be brought against the United States. Because the Seventh Amendment right to a jury trial in civil actions does not apply to lawsuits against the government, *see Lehman v. Nakshian*, 453 U.S. 156, 160 (1981), an aggrieved taxpayer has a right to a jury only if a statute specifically conveys that right. *Sylvester v. United States*, 978 F.Supp. 1186, 1192 (E.D. Wis. 1997). Section 7433 does not. Thus, an aggrieved taxpayer "must try that claim to the court." *Id.* As the Fifth Circuit explained:

> The Seventh Amendment provides a right to a jury trial in "suits at common law." At common law, there was no right of action against a sovereign. *Galloway v. United States*, 319 U.S. 372, 388, 63 S.Ct. 1077, 1086, 87 L.Ed. 1458 (1943); *Mathes v. Commissioner*, 576 F.2d 70, 71 (5th Cir.1978), *cert. denied*, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979). So the Seventh Amendment is inapplicable in actions against the United States. *Lehman v. Nakshian*, 453 U.S. 156, 160, 162 n. 9, 101 S.Ct. 2698, 2701, 2702 n. 9, 69 L.Ed.2d 548 (1981).
>
> A right to a jury trial against the United States exists only if Congress has created such right by statute. In *Lehman*, the Court recognized that Congress has generally prohibited trial by jury in actions against the United States. Given this traditional practice of Congress, the *Lehman* Court concluded that a "plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute." *Id.* at 168, 101 S.Ct. at 2705.

*Information Resources, Inc. v. United States*, 996 F.2d 780, 783 (5th Cir. 1993) (concluding that "Congress has not 'affirmatively and unambiguously' granted a right to a jury trial to plaintiffs bringing actions under § 7432 or § 7433"). Another commentary elaborates upon the point:

> There is no constitutional right to trial by jury in an action against the United States. It is reasoned that the authorization given by Congress to the courts to entertain these actions is not a grant of jurisdiction under Article III of the Constitution, but a method adopted by Congress under Article I to pay the debts of the United States. The Seventh Amendment does not provide any jury trial right because it applies only to "suits at common law" and it is said that at common law there was no right of action against a sovereign enforceable by jury trial or otherwise. Thus, there is no right to jury trial in a suit against the United States whether the suit be contractual in nature or to collect damages for a tort.

9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2314, at 174-75 (3d ed. 2008) (footnotes omitted).

[18](*See* Order Granting Motion to Dismiss, in Part, filed January 4, 2007 (dkt. no. 19), *in M. Julia Hook & David*
(continued...)

-19-

After receiving further briefing on the question,[19] the Bankruptcy Court concluded that "[t]he plain language of the statute refers only to "a district court of the United States," which the bankruptcy court clearly is not," and that "[t]his Court may not entertain a civil action for damages" under § 7433(a).[20] The Bankruptcy Court dismissed the remainder of the debtors' Complaint.[21]

Section 7433(a) says what it says, and the Bankruptcy Court did not err in construing its reference to "a district court of the United States" to mean just that — a federal *district* court. As the Bankruptcy Court points out, Congress distinguished between district courts and bankruptcy courts in drafting § 7433, expressly providing in § 7433(e) that a "taxpayer may petition the bankruptcy court to recover damages against the United States" when "any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code," which is likewise deemed to be "the exclusive remedy for recovering damages resulting from such actions." 26 U.S.C.A. § 7433(e)(1), (2)(A).[22] *Cf. Boettger v. Bowen*, 923 F.2d 1183, 1188 (6th

---

[18](...continued)
*M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.).)

[19]Both the debtors and the United States argued before the Bankruptcy Court that as a non-core proceeding "related" to the debtors' Chapter 11 case, the matter had been referred to the Bankruptcy Court under this court's general order of reference (D. Colo. Local Civil Rule 84.1), and lay within that court's jurisdiction over such proceedings. *See* 28 U.S.C.A. § 157(a). On this appeal, the United States reversed its position, arguing that jurisdiction of § 7433(a) claims is vested exclusively in federal district courts.

[20](*See* Order Dismissing Complaint, filed April 19, 2007 (dkt. no. 27), in *M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB (Bankr. D. Colo.) (citing *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.* 40 F3d 1084, 1086 (10th Cir. 1994).)

[21](*Id.*)

[22]As the Bankruptcy Court also noted, the corresponding Treasury Regulations, 26 C.F.R. §§ 301.7433-1, 301.7433-2, make parallel distinctions between the two courts.

-20-

Cir. 1991) ("Congress indicated that it understood the difference in the meaning of those expressions when it explicitly distinguished between [them] in another provision of the same statute.")[23]

Moreover, the Complaint fails to plead that the debtors exhausted their administrative remedies within the IRS—as § 7433(d)(1) plainly requires. The debtors' pre-petition correspondence challenging the IRS's levy authority and requesting a refund of taxes already collected does not satisfy that exhaustion of administrative remedies requirement. *See* Treas. Reg. §§ 301.7433-1(d) & (e) (setting forth the requirements for exhaustion of administrative claims).[24] This failure is jurisdictional. *See, e.g., Venen v. United States*, 38 F.3d 100, 102-04 (3d Cir. 1994) (affirming dismissal of unexhausted claims under §§ 7432 and 7433 for lack of

---

[23] As stated by Alexander Hamilton in *The Federalist* No. 81, "It is inherent in the nature of sovereignty, not to be amenable to the suit of an individual, without its consent." Sovereign immunity is immunity from suit. *See Black's Law Dictionary* 766 (8th ed. 2004) (defining sovereign immunity as "1. A government's immunity from being sued in its own courts without its consent. . . .") "Since the sovereign need not allow suit against it, the United States is free to allow suit on whatever terms it chooses, and may grant or deny jury trial as it sees fit." Wright & Miller, *supra*, § 2314 (footnote omitted).

> When the government consents to be sued, it can impose conditions on that consent. *See Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). It can require notice of suit, set a statute of limitations, forbid discovery from the government, or even forbid joinder of parties, to name just a few possibilities. The government does not consent to be sued when such a condition is not met, so sovereign immunity generally requires dismissal of the suit if the plaintiff does not satisfy all conditions imposed by the government. *See Block*, 461 U.S. at 287, 103 S.Ct. 1811.

*San Juan County, Utah v. United States*, 503 F.3d 1163, 1175 (10th Cir. 2007) (en banc). Section 7433(a) represents a limited waiver of the United States' sovereign immunity consenting to suit by taxpayers only in federal district courts. The debtors do not explain how this court may unilaterally extend § 7433(a)'s conditional waiver of sovereign immunity to another forum—the Bankruptcy Court—by local rule or order of reference.

[24] The regulations require, *inter alia*, that claimants mark their claims with attention to particular individuals and identify the grounds for relief, the injuries incurred, and the dollar value of each claim. 26 C.F.R. § 301.7433-1(e). There is no indication that the debtors had complied with these filing guidelines prior to commencing this adversary proceeding. There is no copy of the administrative claim in the record, and the debtors fail in their briefs to discuss these requirements at all.

This court raised the exhaustion issue at the hearing, and Mr. Smith referred to his correspondence with the IRS concerning a collections due process hearing. (*See* Transcript of Hearing, dated June 18, 2008, at 40:6-43:7.)

subject matter jurisdiction); *Conforte v. United States*, 979 F.2d 1375, 1377 (9th Cir. 1992) (affirming dismissal for lack of jurisdiction because of failure to exhaust administrative remedies under § 7433); *cf. Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992) (explaining that "[t]he Federal Tort Claims Act . . . vests the federal district courts with exclusive jurisdiction over suits arising from the negligence of Government employees," but "before an individual can file an action against the United States in district court, she must seek an administrative resolution of her claim" to establish subject matter jurisdiction).

For both of these reasons, the Bankruptcy Court lacked subject matter jurisdiction of the debtors' § 7433(a) claims as pleaded in their Complaint, and the Bankruptcy Court's April 19, 2007 Order Dismissing Complaint should be affirmed.

## CONCLUSION

The debtors' Complaint in this adversary proceeding misapprehended the role of the Bankruptcy Court and the nature of the relief available to taxpayers seeking redress for IRS misconduct. The Bankruptcy Court does not sit in direct or collateral review of the validity of Tax Court judgments, and cannot declare a Tax Court judgment "null and void *ab initio*" at the debtors' behest. Given the turnover requirement of 11 U.S.C. § 542, the Bankruptcy Court lacks equitable powers apart from § 542 to grant specific injunctive relief requiring the turnover of estate property seized or levied upon by the IRS. Congress has provided an exclusive remedy for taxpayers aggrieved by alleged misconduct by IRS agents and officers engaged in tax collection activities: a civil damages action against the United States under 26 U.S.C. § 7433(a), jurisdiction of which Congress has vested exclusively in the federal district courts. In this circuit, the availability of the exclusive § 7433(a) remedy precludes a *Bivens*-style civil action against

-22-

individual IRS agents arising directly under the Fifth Amendment. To bring a § 7433(a) claim, the debtors must at least allege their exhaustion of IRS administrative remedies, which in this case they did not.

There is simply nothing left of the debtors' pleaded claims over which the Bankruptcy Court may exercise jurisdiction in this adversary proceeding.

Therefore,

**IT IS ORDERED** that the Bankruptcy Court's Order Granting Motion to Dismiss, in Part, filed January 4, 2007 (dkt. no. 19), *in M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB, is hereby AFFIRMED; and

**IT IS FURTHER ORDERED** that the Bankruptcy Court's Order Dismissing Complaint, filed April 19, 2007 (dkt. no. 27), in *M. Julia Hook & David M. Smith v. United States (In re M. Julia Hook)*, Adversary No. 06-01762 SBB, is hereby AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED this **25** day of September, 2008.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge